IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS HOSACK                         :
                                       :
                                       :
    v.                                 :   Civil Action No. DKC 11-0858
                                       :
UTOPIAN WIRELESS CORP., et al.         :
                                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this shareholder derivative action is the parties' joint motion for voluntary dismissal. (ECF No. 15). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, this motion will be granted.

**I.   Background**

The following facts are set forth in the complaint. (ECF No. 2). Defendant Utopian Wireless Corporation is a holder and lessor of broadband wireless spectrum rights in the 2.5 GHz EBS/BRS spectrum band regulated by the Federal Communications Commission. Prior to November 18, 2010, Utopian's board of directors consisted of three members: (1) Defendant Rudolph J. Geist, chairman and chief executive officer; (2) Holly P. Geist, chief financial officer and the spouse of Mr. Geist; and (3) Plaintiff Douglas Hosack, the chief operating officer. Mr. and

Mrs. Geist and Plaintiff are the corporation's three largest shareholders.

In 2009, Mr. Geist proposed that the corporation issue him a loan in the amount of one million dollars. When Plaintiff expressed concern regarding certain aspects of the proposed transaction, Mr. Geist became enraged, physically intimidated Plaintiff, and threatened to terminate his employment. Under pressure, Plaintiff reluctantly agreed to approve the loan. On March 12, 2009, Plaintiff executed, on behalf of the corporation, a promissory note authorizing the immediate distribution of one million dollars to Mr. Geist. The note provided that repayment of the principal and interest would be made by the earlier of "the Third Anniversary of the Disbursement Date" or "the date on which the Lender has available a total cash balance in all its accounts of less than $50,000 and requires additional cash funding for continued operational expenses." (ECF No. 2-1, promissory note, at ¶ 1.5). The note was secured by Mr. Geist's shares of Utopian stock, which the company was entitled to reclaim and cancel upon default, "based on the fair market value of the Collateral at the time of a Default . . . provided that the fair market value of the common shares . . . shall not be less than $4.00 per share." (ECF No. 2-1, security agreement, at ¶¶ 2, 7).

In 2010, Utopian was awarded approximately eight million dollars in grants and over two million dollars in loans under the Broadband Initiatives Program of the Rural Utility Service of the Department of Agriculture, which was part of the American Recovery and Reinvestment Act of 2009 ("the RUS funding"). On or about November 5, 2010, Plaintiff took certain action to ensure that false certifications were not filed with respect to the RUS funding, despite Mr. Geist's instructions to the contrary. On November 18, 2010, Mr. Geist terminated Plaintiff's employment as a result.[1] As of that date, Mr. Geist had not repaid any portion of the loan.

On January 25, 2011, Plaintiff received a preemptive rights notice and disclosure letter soliciting the sale of additional Utopian stock to current shareholders. In response, Plaintiff, *via* counsel, sent a letter to the board of directors demanding that it refrain from soliciting investment until the Geist loan had been repaid.

On February 21, 2011, Plaintiff received an amended solicitation notice stating, in part:

> Since November 2010, Utopian has been surviving on funds drawn on a limited line of credit made available to the Corporation

---

[1] Plaintiff instituted a separate law suit alleging, *inter alia*, wrongful termination. *See Hosack v. Utopian Wireless Corp., et al.*, Civ. No. DKC 11-0420. That case was closed on August 24, 2011, upon the filing of a stipulation of dismissal with prejudice.

> from Morgan Stanley Inc., which was provided solely due to the personal guarantee of Rudolph J. Geist, Utopian's CEO and principal stockholder. To date, Utopian has drawn down $350,000 on the line of credit. The line of credit is subject to cancellation at any time upon notice from Morgan Stanley for any reason, or in the event Mr. Geist withdraws the guarantee. Mr. Geist has notified Utopian that he will be withdrawing the guarantee.

(ECF No. 2-6, at 1-2) ("the Second Solicitation"). The Second Solicitation further stated that if additional capital was not raised soon, Utopian "would be forced to immediately and completely discontinue operations, and will have no ability to assist its spectrum lessors in meeting the Substantial Service requirements, thereby putting all of its spectrum lease assets at substantial risk of forfeiture on May 1, 2011." (*Id*. at 3). The notice also warned Utopian shareholders, "if you elect not to purchase the convertible notes, your equity in Utopian will be subject to substantial dilution." (*Id*. at 1 (emphasis omitted)).

On March 1, 2011, Plaintiff, proceeding *pro se*, commenced this action against Utopian and Mr. Geist by filing a complaint in the Circuit Court for Montgomery County, Maryland. (ECF No. 2). The complaint seeks: (1) a temporary restraining order enjoining the private placement proposed by the Second Solicitation; (2) a temporary restraining order enjoining cancellation of the Morgan Stanley line of credit; (3) an

4

injunction against the Second Solicitation without full disclosure by Utopian; (4) an injunction against cancellation of the line of credit pending repayment of the Geist loan; (5) an injunction against Geist's participation in financing of Utopian pending his repayment of the loan; (6) equitable appointment of a receiver; (7) equitable appointment of an independent attorney; and (8) equitable rescission of the Geist loan.  Along with the complaint, Plaintiff filed two emergency motions for temporary restraining orders, seeking to enjoin the Second Solicitation and cancellation of the line of credit, which were heard and denied by the circuit court on March 1, prior to service of the complaint.

Defendants timely removed to this court on the basis of diversity of citizenship, and Plaintiff did not challenge the propriety of removal.  On April 7, 2011, Utopian moved to stay these proceedings for six months pending completion of a special litigation committee investigation and report, and Mr. Geist requested a brief extension of the stay.  Plaintiff consented to the stay and did not oppose Mr. Geist's requested extension.  On May 3, the court granted Defendants' motions and stayed all proceedings in this litigation until November 3, 2011.  (ECF No. 14).

On August 24, 2011, the parties jointly filed the pending motion for voluntary dismissal with prejudice, attaching a fully

executed settlement agreement and release. (ECF No. 15).[2] The following day, the court issued an order requiring Utopian to give notice of the proposed dismissal of the derivative claims to the remaining Utopian shareholders, providing ten days for the shareholders to file any objections. (ECF No. 16). Utopian provided notice to the shareholders on August 30, 2011 (ECF No. 17), and no objection has been filed.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 23.1(c), "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval" after "[n]otice . . . [has been] given to shareholders or members in the manner that the court orders." As the United States Court of Appeals for the Fifth Circuit explained in *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983):

> Settlements of shareholder derivative actions are particularly favored because such litigation is "notoriously difficult and unpredictable." *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973); *Republic National Life Insurance Company v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977); Haudek, [*The Settlement and Dismissal of*

---

[2] The settlement agreement purports to resolve all claims brought by Plaintiff in the derivative action and in the prior employment and contract dispute (Civ. No. DKC 11-0420). As consideration supporting dismissal of the derivative action, the parties provide mutual releases and covenants not to sue or disparage. The agreement further provides that the Utopian defendants will not seek reimbursement of costs or attorneys' fees from Plaintiff for filing the derivative action.

> *Stockholders' Actions–Part II: The Settlement*, 23 Sw.L.J. 765, 793 (1969)]. The courts, therefore, do not lightly reject such settlements. *See Florida Trailer & Equipment Company v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). Before approving the settlement of a shareholders' derivative action, however, the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Miller v. Republic National Life Insurance Company*, 559 F.2d [426, 428-29 (5th Cir. 1977)]. In making these determinations, the district court enjoys wide discretion, and in exercising its discretion, the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties. *Lewis v. Newman*, 59 F.R.D. 525, 527 (S.D.N.Y.1973). The district court's approval of a settlement agreement is not therefore to be disturbed unless the court "clearly abused its discretion." *Young*, 447 F.2d at 432; *Miller*, 559 F.2d at 429.
>
> However, the court, upon consideration of a proposed settlement, must state its reasons for approving it and should examine a proposed settlement in light of the objections raised to it, and set forth with sufficient detail a reasoned response to them, including supportive findings of fact and conclusions of law as may be necessary, so that an appellate court, in the event of an appeal, will have a basis for conducting a meaningful review of the exercise of the district court's discretion. *Cotton v. Hinton*, 559 F.2d 1326, 1330-31 (5th Cir. 1977).

(footnote omitted).

**III. Analysis**

In the memorandum supporting the motion for voluntary dismissal, the parties set forth their agreement as to events occurring since the filing of the complaint that have either rendered moot the relief sought by Plaintiff or clarified that certain claims are not cognizable.  Copies of the motion for voluntary dismissal, including the supporting memorandum, were provided to each of the Utopian shareholders and, as noted, no objection has been filed.

The complaint primarily challenges the propriety of the Second Solicitation, which Plaintiff feared would result in dilution of the shares of Utopian stock held by stockholders who declined to participate.  The parties now agree that:

> After the Circuit Court for Montgomery County denied Plaintiff's request for a temporary restraining order that would prevent the Stock Solicitation, Utopian issued convertible notes that Utopian had the right to repay in full at any time prior to July 31, 2011.  Utopian exercised its right to repay the convertible notes, and has repaid in full all amounts due under all convertible notes issued, such that no convertible notes remain outstanding.  Therefore, there has been no change in Utopian's ownership, or dilution of any shareholder's interest in Utopian.  On August 9, 2011, Utopian provided its shareholders with notice of these events.

(ECF No. 15-1, at 2).  As the Second Solicitation, which Plaintiff sought to enjoin, has now taken place and the

convertible notes issued pursuant thereto have been repaid by the company, the concern that dilution might result has not come to fruition. Accordingly, the derivative claims in this regard have been rendered moot.

Plaintiff's claims regarding the loan to Mr. Geist were based on his belief that Utopian's reported near-insolvency triggered the early repayment provisions of the loan. While that may or may not have been the case, the parties agree that Utopian is now on more solid financial footing, as evidenced by its repayment of all amounts due under the convertible notes that it raised in the Second Solicitation. Thus, the parties assert, "[t]here is no need to trigger an early repayment of the Loan as Utopian is not in need of cash from the repayment . . . which is due in March 2012," *i.e.*, the third anniversary of the disbursement date. (*Id*. at 3). To the extent that no shareholder contends at this point that the early repayment provisions were triggered, and the time for repayment of the loan has not yet passed, the derivative claims in this regard appear to be premature.

The claims seeking to enjoin Mr. Geist's withdrawal of his guaranty of the Morgan Stanley line of credit were related to the company's threatened insolvency; indeed, Plaintiff alleged that because "this harm threatens Utopian's very survival, it would be both substantial and irreparable." (ECF No. 2 ¶ 49).

9

The circuit court denied Plaintiff's request for a temporary restraining order enjoining cancellation of the line of credit, however.  Although it is unknown whether the guaranty has been withdrawn, there is no dispute that Mr. Geist would be within his rights to do so and the threatened fiscal crisis appears to have been averted.  As no shareholder has noted an objection to the dismissal of these claims, there appears to be no reason why the requested relief should not be granted.[3]

In sum, the court finds no evidence of fraud or collusion in the parties' agreement to settle this case, and further finds that the proposed settlement is fair, reasonable, and adequate.

**IV. Conclusion**

For the foregoing reasons, the parties' motion for voluntary dismissal will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[3] Because the substantive claims in this action appear to no longer be viable, the appointment of a receiver or court-appointed attorney, as requested in the complaint, is unnecessary.